UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| CARL GRIMES, | No. C 12-06381 LB |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND TO STRIKE** |
| v. | |
| SAN MATEO COUNTY TRANSIT DISTRICT, et al., | [Re: ECF No. 14] |
| Defendants. | |

**INTRODUCTION**

*Pro se* plaintiff Carl Grimes, a former bus operator for the defendant San Mateo County Transit District (the "District"), has sued the District and ten individuals (Michael Scanlon; Karambir Cheema; Said El-Khatib; Sonja Higgins; Derrick Fisher; Art Gonzales; Bill Carson; Gigi Herington; William Snell; and Sandy Wong) (collectively, the "Individual Defendants") related to it in various ways for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and California Government Code § 12940. *See* Complaint, ECF No. 1 at 1-4; *id.*, ECF No. 1-1 at 1-13. The District and the Individual Defendants (collectively, "Defendants") now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Mr. Grimes's complaint and under Federal Rule of Civil Procedure 12(f) to strike his prayer for punitive damages against the District. Motion, ECF No. 14. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the May 2, 2013 hearing. Upon consideration of the applicable authority,

C 12-06381 LB
ORDER

the arguments of the parties, and the record in this case, the court **GRANTS IN PART** Defendants' motion.

**STATEMENT**

According to his complaint, Mr. Grimes originally began working at the District on February 1, 2008. Complaint, ECF No. 1-1 at 5. On December 19, 2009, he was laid off. Complaint, ECF No. 1-1 at 5. He was re-hired, as a full-time bus operator, on November 19, 2010. Complaint, ECF No. 1-1 at 1.

At various times over the next year-and-a-half or so, Mr. Grimes alleges that he was subjected to instances of discrimination, harassment, and/or retaliation at the hands of the District and the Individual Defendants. To make Mr. Grimes's allegations clear, the court summarizes them in chronological order as follows:

- On November 22, 2010, Mr. El-Khatid "falsely accused" Mr. Grimes over being one day late for his "employment drug screen and physical exam." Complaint, ECF No. 1-1 at 1.
- On June 10, 2011, Mr. Cheema "falsely accuse[d] [Mr. Grimes] of being verbally abusive to [a] payroll employee concerning a child support matter," and Mr. Grimes "was instructed not to contact the human resource[s] department." Complaint, ECF No. 1-1 at 1.
- On June 14, 2011, Mr. Fisher "follow[ed] [Mr. Grimes] to the rest room and then [to] the parking lot of the North Base [b]us yard" in South San Francisco, California, and told Mr. Grimes, "I hear a lot of rumors about you don't [sic] come to work! [Y]ou are always complaining about being harassed and filing complaints with the Department of Fair Employment and Housing [("DFEH")][.] Samtrans [the District] don't play that[.]" Complaint, ECF No. 1-1 at 1.
- Ms. Hill told Mr. Grimes, "[Y]ou are special," because Mr. Grimes "requested to leave work early due to a family emergency" on June 14, 2011. Complaint, ECF No. 1-1 at 1.
- Also on June 14, 2011, Mr. Cheema "question[ed] [Mr. Grimes] regarding the whereabouts of his fianc[e′]e prior to [Mr. Grimes] leaving work[.]" Complaint, ECF No. 1-1 at 1.
- On June 15, 2011, Mr. Grimes was "instructed to report to [Mr.] Cheema's office" and was "verbally abused." Complaint, ECF No. 1-1 at 1. Mr. Grimes stated that he "would file a

complaint" with DFEH.  Complaint, ECF No. 1-1 at 1.

- On June 21, 2011, Mr. Gonzales follow[ed] and [took] photos of [Mr. Grimes]" and also "call[ed] [Mr. Grimes] names (WACKY) meaning crazy," and "taunted [Mr. Grimes] [by] stating [that Mr. Grimes] could file a complaint" with DFEH.  Complaint, ECF No. 1-1 at 1.
- Also on June 21, 2011, Mr. Grimes contacted Ms. Higgins and told her that he "could not continue his route due to feeling ill and harassed due to [Mr.] Gonzales['s] behavior."  Ms. Higgins "continued to insist [that Mr. Grimes] drive the bus to the North Base bus yard."  Because he "was too ill to drive," Mr. Grimes "returned to the bus yard by way of taxi."  Complaint, ECF No. 1-1 at 2.
- On June 21, 2011, Mr. Grimes filed a complaint for harassment with [the District's] employee relations department.  While he was being interviewed by Mr. El-Khatib, Mr. Gonzales "entered [Mr. El-Khatib's office] in a threatening manner [and threw] his business card at [Mr. Grimes]."  Mr. Gonzales told Mr. Grimes that Mr. Grimes had spelled his name wrong and to "get it right."  In addition, Mr. El-Khatib "yelled at [Mr. Grimes] during the interview" and later "removed [Mr. Grimes] from service due [to] the fact [that Mr. Grimes] complained and filed a complaint of employment discrimination."  Ms. El-Khatib and Ms. Higgins "celebrated [Mr. Grimes] being removed from service."  Complaint, ECF No. 1-1 at 2.  (Mr. Grimes ultimately was removed from service from June 21, 2011 through either October 17, 2011 or October 19, 2011.)  *Compare* Complaint, ECF No. 1-1 at 2 *with id.* at 6.
- On June 22, 2011, Mr. Grimes "filed a second complaint of discrimination and harassment with [the District's] employee relations department."  His complaint was addressed to Mr. Carson and "concern[ed] the June 21, 2011 incident with [Mr.] Gonzales, and [Mr. Grimes's removal] from service."  Complaint, ECF No. 1-1 at 2.
- On June 23, 2011, Mr. Grimes "filed a complaint with [DFEH] against [the District] alleging harassment and retaliation [in relation to his] June 21, 2011 removal from service."  Complaint, ECF No. 1-1 at 2.
- On September 22, 2011, the District "began to retaliate against" Mr. Grimes.  Mr. El-Khatib accused Mr. Grimes of having accumulated a series of "miss-outs," which is the District's phrase

for when an employee does not arrive at work on time. Complaint, ECF No. 1-1 at 3.

- On October 14, 2011, "the defendant" "continued to retaliate against" Mr. Grimes. Mr. Cheema "gave notice to [Mr. Grimes] of a disciplinary suspension without pay for fifteen days," "for alleged rule violations" on June 21, 2011. In the letter of discipline, Mr. Cheema stated that Mr. Grimes "creates a threatening and tense work environment." Mr. Grimes retorts that he was "falsely portrayed as [having been] rude and threatening to passengers" on June 1, 2011, June 6, 2011, and June 18, 2011. Additionally, Ms. Higgins apparently felt afraid after Mr. Grimes stated that he was planning to sue the District. Complaint, ECF No. 1-1 at 4.

- On November 21, 2011, Mr. Grimes "filed complaints of harassment with [DFEH]" and "also filed complaints of harassment" with Mr. Carson in the District's employee relations department, "concerning . . . the fabricated retaliatory letter of suspension." Complaint, ECF No. 1-1 at 5.

- On October 17, 2011, Mr. Grimes attended a training session at which Ms. Wong "taunted [him] about his attendance" by saying, "Carl Grimes is here 2 days in a row, that's a record." Mr. Jordan also attended the training session. Complaint, ECF No. 1-1 at 6.

- In November 2011, "[t]he defendant" "attempted to terminate [Mr. Grimes's] employment" "by fabricating [that Mr. Grimes] had acquired 6 miss-outs," when, in fact, Mr. Grimes had been "removed from service" during some of the dates on which the purported miss-outs occurred. Complaint, ECF No. 1-1 at 6.

- On December 5, 2011, Mr. Grimes attended another training session. At it, the instructor, Mr. Snell, "openly displayed an electric stun gun." It "fell out of [Mr. Snell's] pocket 3 times, [so he] finally placed[d] [it] on the table [that] he was standing next to," and this made Mr. Grimes feel "very uncomfortable and stressed." Mr. Snell also told Mr. Grimes that the District "was willing to pay to get rid of their problem (meaning [Mr. Grimes,] in reference to [his] many complaints of harassment)." Complaint, ECF No. 1-1 at 6.

- On March 20, 2012, Mr. El-Khatib issued Mr. Grimes "a disciplinary letter of intention to terminate for unsatisfactory attendance." Complaint, ECF No. 1-1 at 6.

- On March 21, 2012[1], Mr. Grimes complained to Ms. Herington, who works in the District's employee relations department, about "harassment and acts of retaliation." Specifically, Mr. Grimes complained about Ms. Higgins's comments in October 2011, "the defendant's" attempt to terminate him for miss-outs in November 2011, and Ms. Snell's placement of an electric stun gun in December 2011. Complaint, ECF No. 1-1 at 7.

- On March 27, 2012, "the defendant called the transit police on" Mr. Grimes. "The transit police were waiting for [Mr. Grimes] at [the District's] North Base bus yard . . . [and] questioned [him]" for "more than one hour," "asking [him] if his co-workers were safe due to [the fact that his] employment was about to be terminated[.]" "This incident cause [him] great emotional distress and fear." That same day, Mr. Grimes "reported this incident to" DFEH. Complaint, ECF No. 1-1 at 7.

- On April 27, 2012, Mr. Grimes's employment was terminated. Complaint, ECF No. 1-1 at 7.

Mr. Grimes instituted this action on December 17, 2012, naming the District and the Individual Defendants as defendants. The gist of his complaint is that he faced discrimination and harassment and was retaliated against for complaining about the discrimination and harassment. He brings three claims: (1) for "Discrimination, Failure to Engage in Interactive Process and Failure to Prevent Discrimination" in violation of Title VII; (2) for "Harassment and Retaliation" in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3; and (3) for "Tortious Discharge in Violation of Public Policy" in violation of section 704 of Title VII, 42 U.S.C. § 2000e-3, and California Government Code § 12940.[2] Complaint, ECF No. 1-1 at 9. He seeks "general damages," "all present and future medical and incidental expenses," $2 million in punitive damages, "loss of earnings," "loss of earnings capacity," and "reinstatement of employment with back pay."

---

[1] Mr. Grimes's complaint states that he made this complaint on March 21, 2011 (rather than 2012), but the court assumes that this is an inadvertent error because, as explained above, he also states that he complained about events that occurred from October through December 2011 – months after March 2011. *See* Complaint, ECF No. 1-1 at 7.

[2] Mr. Grimes also briefly mentions 42 U.S.C. § 1983, but he does not include it as a basis for a separate claim, as he did for the three claims described above. *See* Complaint, ECF No. 1-1 at 7, 9. Accordingly, the court construes Mr. Grimes's complaint as not containing a claim for violation of 42 U.S.C. § 1983.

Complaint, ECF No. 1-1 at 10-11.

Defendants move under Rule 12(b)(6) to dismiss Mr. Grimes's complaint and under Rule 12(f) to strike his prayer for punitive damages.  Motion, ECF No. 14.  Mr. Grimes opposes the motion. Opposition, ECF No. 18.

## ANALYSIS

### I. DEFENDANTS' MOTION TO DISMISS

#### A. Legal Standard

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*

*Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**B. Application**

Defendants make several arguments in support of their motion to dismiss. The court has broken them into three groups, as follows.

*1. Defendants' Argument that All of Mr. Grimes's Claims Fail Because He Does Not Allege Facts to Support the Elements of His Claims*

Defendants first argue that all of Mr. Grimes's claims should be dismissed because he "fails entirely to state *any* facts supporting his claims" and merely "recites a series of factual allegations followed by his three asserted causes of action." Motion, ECF No. 14 at 10. Mr. Grimes responds only by saying in conclusory fashion that he has sufficiently alleged his claims. *See* Opposition, ECF No. 18 at 2.

The court agrees with Defendants with respect to Mr. Grimes's first claim against the District for discrimination in violation of Title VII, but not with respect to his second claim against the District for harassment and retaliation in violation of Title VII. (The court will address Mr. Grimes's first and second claims against the Individual Defendants and his third claim against Defendants in detail below and therefore omits them from the discussion in this section.)

Mr. Grimes does not allege plausible claims for discrimination or harassment (which really is a claim for a hostile work environment[3]) in violation of Title VII. Title VII provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

---

[3] "A plaintiff may sustain a claim under Title VII . . . based on a hostile work environment theory by establishing that the employer has subjected plaintiff to a 'pattern of ongoing and persistent harassment severe enough to alter the conditions of employment.'" *Ramadan v. City of Napa*, No. C 06-01804 MHP, 2007 WL 1655624, at *7 (N.D. Cal. June 7, 2007) (quoting *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 871 (9th Cir. 2001) and citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000)).

C 12-06381 LB
ORDER                                        7

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). "The emphasis of both the language and the legislative history of the statute is on eliminating discrimination in employment; similarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex, or national origin." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977). Thus, to state a claim for discrimination under Title VII, a plaintiff must establish that (1) he or she was a member of a protected class, (2) he or she was performing his or her job in a satisfactory manner, (3) he or she was subjected to an adverse employment action, and (4) employees not in the protected class were not treated similarly. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). In addition, an employer is liable under Title VII for conduct giving rise to a hostile work environment if plaintiff proves that (1) she was subjected to verbal or physical conduct of a harassing nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. *Kortan v. California Youth Authority*, 217 F.3d 1104, 1090-10 (9th Cir. 2000); *see also Hughes v. Hospital*, No. C 99–2487 SI, 2001 WL 492483, at *3 (N.D. Cal. Apr. 30, 2001). In determining whether challenged conduct constitutes an actionable hostile work environment, courts must consider "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

But as Defendants point out, nowhere in his complaint does Mr. Grimes allege facts that even suggest that he was a member of a protected class, that he was performing his job satisfactorily, or that employees not in his protected class were not treated similarly. Without these allegations, Mr. Grimes does not state a plausible claim for discrimination. Likewise, his allegations of harassment are either not severe (e.g., his allegation that Ms. Wong "taunted [him] about his attendance" by saying, "Carl Grimes is here 2 days in a row, that's a record" or Ms. Higgins "insist[ing] [that Mr.

Grimes] drive the bus to the North Base bus yard") or are disciplinary actions takes due to his failure to appear at work on time (e.g., his suspensions for miss-outs). Under the circumstances, as alleged, the court finds that Mr. Grimes's allegations do not suggest a plausible claim for a hostile work environment.

Mr. Grimes's allegations do, however, suggest at least a plausible claim for retaliation in violation of Title VII. To prove retaliation in violation of Title VII, a plaintiff must demonstrate that she engaged in an activity protected by Title VII, that her employer subjected her to an adverse employment action, and that there was a causal link between the protected activity and the adverse action. *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (discussing the requirements for a prima facie showing of retaliation under Title VII); *see also Hines v. California Public Utilities Comm'n*, No. C–10–2813 EMC, 2011 WL 724658, at *2 (N.D. Cal. Feb. 23, 2011). Here, Mr. Grimes's allegations about the events surrounding his work environment and his termination are sufficient enough to allow him to get past the pleading stage. He alleges that he filed complaints with the District's employee relations department and DFEH, that this was known to the District, and that certain District supervisors expressed displeasure about his doing so. Accordingly, Mr. Grimes's second claim, to the extent it is for retaliation, survives the pleading stage.

*2. Defendants' Arguments with Respect to Mr. Grimes's Claims Against the Individual Defendants*

Defendants argue that Mr. Grimes's claims (including his third claim for tortious discharge in violation of public policy, to the extent it is based on Title VII) against the Individual Defendants must be dismissed because they cannot be held individually liable under Title VII. Motion, ECF No. 14 at 11-12. The court agrees. They correctly point out that under Title VII, only an "employer" may be held liable for discrimination against an employee. *See* 42 U.S.C. § 2000e-3(a). In turn, the term "employer," as used in Title VII, means "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).

While Mr. Grimes at various times describes the Individual Defendants as his fellow employees

1 or supervisors[4], nowhere in his complaint does he allege that any of them was his employer. *See generally* Complaint, ECF No. 1 at 1-4; *id.*, ECF No. 1-1 at 1-13. Instead, he alleges that he was employed by the District. *See* Complaint, ECF No. ECF No. 1-1 at 1 ("The plaintiff began his employment with the defendant San Mateo County Transit District [Samtrans] on the date of November 19, 2010, as a full time Bus Operator."). And while some courts have held that supervisors and other agents are employers within the meaning of Title VII, *see*, *e.g.*, *Hamilton v. Rodgers,* 791 F.2d 439, 442-43 (5th Cir. 1986), *limited by*, *Harvey v. Blake,* 913 F.2d 226, 227-28 (5th Cir. 1990), the Ninth Circuit has held that "individual defendants cannot be held liable for damages under Title VII," *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587 (9th Cir. 1993).

Again, Mr. Grimes does not allege anywhere that an Individual Defendant is or was his employer for purposes of Title VII, and, based on the record before it, the court does not have any reason to so conclude. Moreover, "[t]he common law cause of action for tortious discharge 'cannot be broader than the constitutional provision or statute on which it depends.'" *Hollie v. Concentra Health Services, Inc.*, No. C 10–5197 PJH, 2012 WL 993522, at *8 (N.D. Cal. Mar. 23, 2012) (quoting *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159 (1998)). This means that, because the Individual Defendants are not subject liability under Title VII, Title VII cannot provide a basis for Mr. Grimes's tortious discharge claim, either. Accordingly, Mr. Grimes's three claims, to the extent they are brought against the Individual Defendants for violation of Title VII, must be dismissed with prejudice.[5]

---

[4] Mr. Grimes described Mr. Scanlon as "Gen.mngr.CEO," Complaint, ECF No. 1 at 2; Mr. El-Khatid as "assistant superintendent," *id.*, ECF No. 1-1 at 1; Mr. Cheema as "superintendent," *id.*, ECF No. 1-1 at 1; Mr. Fisher as "supervisor," *id.*, ECF No. 1-1 at 1; Mr. Gonzales as "supervisor," *id.*, ECF No. 1-1 at 1; Ms. Higgins as "dispatcher F.M.C. (Fleet Management Control)," *id.*, ECF No. 1-1 at 2; Mr. Carson as "supervisor," *id.*, ECF No. 1-1 at 2; Ms. Wong as "secretary," *id.*, ECF No. 1-1 at 6; Mr. Snell as "training instructor," *id.*, ECF No. 1-1 at 6; and Ms. Herington as "supervisor," *id.*, ECF No. 1-1 at 7.

[5] Defendants also argue that Mr. Grimes's Title VII-based claims against the Individual Defendants must be dismissed because Mr. Grimes does not allege that he filed charges against them with either the EEOC or DFEH. Motion, ECF No. 14 at 12-14. Because the court dismisses with prejudice Mr. Grimes's Title VII-based claims against the Individual Defendants because they are not "employers" and thus are not subject to liability under Title VII, the court does not reach

1  Defendants also argue that Mr. Grimes's third claim against the Individual Defendants for
2  tortious discharge (or wrongful termination) in violation of public policy (to the extent it is based on
3  California Government Code § 12940) must be dismissed because this claim may only be brought
4  against employers. Motion, ECF No. 14 at 14-15. "Wrongful termination in violation of public
5  policy is a common law cause of action judicially created by *Tameny v. Atlantic Richfield Co.*, 27
6  Cal. 3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980), in which the California Supreme Court stated
7  that, 'when an employer's discharge of an employee violates fundamental principles of public
8  policy, the discharged employee may maintain a tort action and recover damages traditionally
9  available in such actions.'" *Conwright v. City of Oakland*, No. C09–2572 THE, 2010 WL 3515741,
10 at *5 (N.D. Cal. Sep. 8, 2010) (quoting *Tameny*, 27 Cal. 3d at 170). The public policy implicated
11 must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that
12 it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3)
13 well established at the time of discharge; and (4) substantial and fundamental." *Freund v. Nycomed*
14 *Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) (quoting *City of Moorpark*, 18 Cal. 4th at 1159). "In
15 general, the elements of a claim for wrongful termination in violation of public policy are (1) an
16 employer-employee relationship; (2) an adverse employment action, (3) that the adverse
17 employment action violated public policy, and (4) the adverse employment action caused the
18 employee damages." *Hollie*, 2012 WL 993522, at *8 (citing *Miklosy v. Regents of Univ. of Cal.*, 44
19 Cal. 4th 876, 900 (2008) and *Haney v. Aramark Uniform Servs., Inc.*, 121 Cal. App. 4th 623, 641
20 (2004)). Thus, only employers are subject to a claim for wrongful termination in violation of public
21 policy. *See Angel v. North Coast Couriers, Inc.*, No. C 11–01028 JSW, 2012 WL 300025, at *2
22 (N.D. Cal. Feb. 1, 2012) ("Plaintiffs' claim for wrongful termination in violation of public policy
23 also requires a determination that Defendants were Plaintiffs' employer.") (citing *Miklosy*, 44 Cal.
24 4th at 900).

25 As the court explained above, Mr. Grimes does not allege that any of the Individual Defendants
26 are his employer, and, in fact, he alleges that he is employed by the District. Accordingly, Mr.

---

Defendants' administrative exhaustion argument.

Grimes's third claim from tortious discharge in violation of public policy (to the extent it is based on California Government Code § 12940) must be dismissed with prejudice, too.

### *3. Defendants' Arguments with Respect to Mr. Grimes's Claims Against the District*

Defendants argue that Mr. Grimes's third claim against the District (as opposed to against the Individual Defendants) for tortious discharge (or wrongful termination) in violation of public policy must be dismissed because public entities cannot be subject to such a claim. Motion, ECF No. 14 at 15-16. The court agrees. "California Government Code section 815 'abolishes common law tort liability for public entities' and therefore 'bars *Tameny* actions against public entities.'" *Conwright*, 2010 WL 3515741, at *5 (quoting *Miklosy*, 44 Cal. 4th at 899–900). California Government Code § 811.2 defines a "public entity" to "include[] the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Here, Defendants assert that the District is a "public entity" within this definition cited above, and Mr. Grimes does not argue otherwise. *Cf. Ross v. San Francisco Bay Area Rapid Transit Dist.*, 146 Cal. App. 4th 1507, 1513-14, 1517 (1st Dist. 2007) (suggesting in dicta that an entity similar to the District, the San Francisco Bay Area Rapid Transit District, is a "public entity" under California Government Code § 811.2 and thus was shielded from liability under California Government Code § 815). Accordingly, because the District is shielded from tort liability pursuant to California Government Code § 815, Mr. Grimes's claim against the District for tortious discharge in violation of public policy must be dismissed with prejudice.

## II. DEFENDANTS' MOTION TO STRIKE

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts may use Rule 12(f) to strike from complaints requests for damages that cannot be awarded as a matter of law. *See Gay-Straight Alliance Network v. Visalia Unified School Dist.*, 262 F. Supp. 2d 1088, 1110-11 (E.D. Cal. 2001). Motions to strike are regarded with disfavor, as they are often used as delaying tactics, and should not be granted "unless it is clear that the matter to be stricken could have no possible

bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party. *California ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

**B. Application**

Citing California Government Code § 818, which states that "[n]otwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant," Defendants argue that Mr. Grimes's prayer for punitive damages against the District must be struck because the District is a public entity. Motion, ECF No. 14 at 9, 17. Mr. Grimes does not argue otherwise. *See generally* Opposition, ECF No. 18.

Defendants are correct with respect to Mr. Grimes's third claim, to the extent it is based on a violation of California Government Code § 12940, because California Government Code § 818 applies to punitive damages based on violations of state law. *See Tan v. University of CA San Francisco*, No. 06-04697 THE, 2007 WL 963223, at *1 (N.D. Cal. Mar. 29, 2007) (applying California Government Code § 818 to prayers for punitive damages based on state law claims).

But they are not correct with respect to Mr. Grimes's claims to the extent they are based on violations of Title VII because California Government Code § 818 does not apply to claims based on federal law. *See Barefield v. California State University Bakersfield*, No. CIVF05-0633AWI TAG, 2006 WL 829122, at *7 (E.D. Cal. Mar. 28, 2006) ("Section 818 does not apply against federal laws."); *see also Hines v. California Public Utilities Comm'n*, No. C 07-4145 CW, 2008 WL 2631361, at *11 n.11 (N.D. Cal. June 30, 2008) ("Defendants' argument that punitive damages are barred by California Government Code § 818 is incorrect. Plaintiff's Title VII claims are governed by federal law, not California law.") (citing *Barefield*); *Tan*, 2007 WL 963223, at *1 ("Government Code § 818 does not apply to Plaintiff's federal claims.") (citing *Barefield*).

Nevertheless, it is true that Mr. Grimes's prayer for punitive damages against the District, to the extent they are based on violations of Title VII, must be struck, albeit for a different reason: "punitive damages are not available for Title VII claims against a 'government, government agency or political subdivision.'" *Hines*, 2008 WL 2631361, at *11 (quoting 42 U.S.C. § 1981a(b)(1)); *see Barefield*, 2006 WL 829122, at *7 (explaining that "under the terms of Title VII itself, punitive damages are not recoverable against governmental entities") (citing 42 U.S.C. § 1981a(b)(1); *Singleton v. University of California*, No. C-93-3496 MHP, 1995 WL 16978, at *3 (N.D. Cal. Jan. 6, 1995) (finding that the University of California and its Regents are government entities against which punitive damages cannot be awarded when they are based on Title VII claims)).

Accordingly, Defendants' motion to strike must be granted. Because Mr. Grimes's claims are for violation of Title VII and California Government Code § 12940, the court strikes his prayer for punitive damages against the District.

## CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** Defendants' motions. All of Mr. Grimes's claims against the Individual Defendants are **DISMISSED WITHOUT LEAVE TO AMEND**, and the Mr. Grimes's third claim against the District for tortious discharge in violation of public policy is **DISMISSED WITHOUT LEAVE TO AMEND** as well. As for Mr. Grimes's first claim against the District for discrimination in violation of Title VII and his second claim against the District for harassment in violation of Title VII, the court **DISMISSES** them **WITH LEAVE TO AMEND**. His second claim against the District for retaliation in violation of Title VII **SURVIVES**. In addition, the court **STRIKES** Mr. Grimes's prayer for punitive damages against the District. Mr. Grimes shall file any First Amended Complaint no later than May 20, 2013.

**IT IS SO ORDERED.**

Dated: April 22, 2013

_____
LAUREL BEELER
United States Magistrate Judge